Case 2:15-cv-00713-MVL-JCW Document 27 Filed 06/02/15 Page 1 of 12

Quasi-judicial immunity for fraud upon the court? The Stephen Doyne ... Page 4 of 5

Take a look at how a 170.1 challenge of a Judge is handled. Frequently a challenged Judge rules on their own challenge....

Taking the process one step further—the Presiding Judge ships the 170.1 motion off to the Chief Justice's Office to the staff member that typically assigns review of the matter to a Judge that often as not....has previously been challenged—

*EXHIBIT O*

Golly—Gee—does this sound like a rigged process?—No appeal permitted.

Reply

5. cole stuart

November 1, 2011

1

0

i
Rate This

Doyne, Love, Sparta et al, are exposed frauds. Sue them and vote out the judges who appoint them. April, 2012. They are parasitic scum causing the decay of our great communities. Go to http://www.angiemedia.com for details.

Good luck people... April, 2012...

Reply

6. Family Court Professional--disgusted with my own job

May 21, 2013

1

0

i
Rate This

✘Folks–take them to federal court–much less likely to encounter immunities. Sue under RICO, 42 U.S.C. 1985 and 1983. Their professional comrporations aren't immune, and they aren't under federal law either. Get out of state court–and don't bother with The Commission on Judicial Performance –they're all crooked.

Reply

EXHIBIT P

However, a "consequence of [the] Court's recognition of pre-ratification sovereignty as the source of immunity from suit is that *only* States and *arms of the State* possess immunity from suits authorized by federal law." *Northern Ins. Co. of N. Y. v. Chatham County* (emphases added). Thus, cities and municipalities lack sovereign immunity, *Jinks v. Richland County*, and counties are not generally considered to have sovereign immunity, even when they "exercise a 'slice of state power.'" *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*.

## Tribal sovereign immunity

The federal government recognizes tribal nations as "domestic dependent nations" and has established a number of laws attempting to clarify the relationship between the federal, state, and tribal governments. Generally speaking, Native American tribes enjoy immunity from suit—in federal, state, or tribal courts—unless they consent to suit, or unless the federal government abrogates that immunity.[8]

## Foreign sovereign immunity in state and federal courts

The Foreign Sovereign Immunities Act (FSIA) of 1976 establishes the limitations as to whether a foreign sovereign nation (or its political subdivisions, agencies, or instrumentalities) may be sued in U.S. courts—federal or state. It also establishes specific procedures for service of process and attachment of property for proceedings against a Foreign State. The FSIA provides the exclusive basis and means to bring a lawsuit against a foreign sovereign in the United States. In international law, the prohibition against suing a foreign government is known as state immunity.

## Local governmental immunity

Counties and municipalities are not entitled to sovereign immunity. In Lincoln County v. Luning, 133 U.S. 529 (1890), the Court held that the Eleventh Amendment does not bar an individual's suit in federal court against a county for nonpayment of a debt. (By contrast, a suit against a statewide agency is considered a suit against the state under the Eleventh Amendment. See, e.g., Edelman v. Jordan, 415 U.S. 651 (1974); Ford Motor Co. v. Department of Treasury, 323 U.S. 459 (1945)). In allowing suits against counties and municipalities, the Court was unanimous, relying in part on its "general acquiescence" in such suits over the prior thirty years. William Fletcher, a professor of legal studies at Yale University, explains the different treatment on the ground that in the nineteenth century, a municipal corporation was viewed as more closely analogous to a private corporation than to a state government. Fletcher, note 2.

County and municipal officials, when sued in their official capacity, can only be sued for prospective relief under Federal law.[9] Under state law, however, the Court in Pennhurst noted that even without immunity, suits against municipal officials relate to an institution run and funded by the state, and any relief against county or municipal officials that has some significant effect on the state treasury must be considered a suit against the state, and barred under the doctrine of sovereign immunity.

## Exceptions and abrogation

There are exceptions to the doctrine of sovereign immunities derived from the 11th amendment:

### Discrimination

If the state or local government entities receive federal funding for whatever purpose, they cannot claim sovereign immunity if they are sued in federal court for discrimination. The United States Code, Title 42 (http://www.law.cornell.edu/uscode/html/uscode42/usc_sup_01_42.html), Section 2000d-7 (http://www.law.cornell.edu/uscode/html/uscode42/usc_sec_42_00002000---d007-.html) explicitly says this.

The Supreme Court decision of *Board of Trustees of the University of Alabama v. Garrett* seems to nullify this; however, numerous appellate court cases, such as *Doe v. Nebraska* in the 8th Circuit[10] and *Thomas v. University of Houston* of the 5th Circuit[11] have held that, as long as state entity receives federal funding, then the sovereign immunity for discrimination cases is not abrogated, but voluntarily waived. Since the receiving of the federal funds - such as FAFSA and affirmative action - was optional, then the waiver of sovereign immunity was optional. If a state entity wanted its sovereign immunity back, all they have to do in these circuits is stop receiving federal funding.

However, the 2nd Circuit does not share this ideal.[12] Currently, they are the only federal court of appeals to take this approach to

EXHIBIT Q

C. Burton Kolder, CPA*
Russell F. Champagne, CPA*
Victor R. Slaven, CPA*
P. Troy Courville, CPA*
Gerald A. Thibodeaux, Jr., CPA*
Robert S. Carter, CPA*
Arthur R. Mixon, CPA*

Tynes E. Mixon, Jr., CPA
Allen J. LaBry, CPA
Albert R. Leger, CPA,PFS,CSA*
Penny Angelle Scruggins, CPA
Christine L. Cousin, CPA
Mary T. Thibodeaux, CPA
Marshall W. Guidry, CPA
Alan M. Taylor, CPA
James R. Roy, CPA
Robert J. Metz, CPA
Kelly M. Doucet, CPA
Cheryl L. Bartley, CPA, CVA
Mandy B. Self, CPA

Retired:
Conrad O. Chapman, CPA* 2006
Harry J. Ciostio, CPA 2007

* A Professional Accounting Corporation

## KOLDER, CHAMPAGNE, SLAVEN & COMPANY, LLC
CERTIFIED PUBLIC ACCOUNTANTS

P.O. Box 82329
Lafayette, LA 70598

Phone (337) 232-4141
Fax (337) 232-8660

OFFICES

183 South Beadle Rd.
Lafayette, LA 70508
Phone (337) 232-4141
Fax (337) 232-8660

113 East Bridge St.
Breaux Bridge, LA 70517
Phone (337) 332-4020
Fax (337) 332-2867

133 East Waddill St.
Marksville, LA 71351
Phone (318) 253-9252
Fax (318) 253-8681

1234 David Dr. Ste 203
Morgan City, LA 70380
Phone (985) 384-2020
Fax (985) 384-3020

408 West Cotton Street
Villa Platte, LA 70586
Phone (337) 363-2792
Fax (337) 363-3049

332 West Sixth Avenue
Oberlin, LA 70655
Phone (337) 639-4737
Fax (337) 639-4568

200 South Main Street
Abbeville, LA 70510
Phone (337) 893-7944
Fax (337) 893-7946

450 East Main Street
New Iberia, LA 70560
Phone (337) 367-9204
Fax (337) 367-9208

1013 Main Street
Franklin, LA 70538
Phone (337) 828-0272
Fax (337) 828-0290

WEB SITE:
WWW.KCSRCPAS.COM

REPORT ON INTERNAL CONTROL OVER
FINANCIAL REPORTING AND ON COMPLIANCE
AND OTHER MATTERS BASED ON AN AUDIT OF
FINANCIAL STATEMENTS PERFORMED IN ACCORDANCE
WITH GOVERNMENT AUDITING STANDARDS

The Honorable Edmond E. Kinler, Jr.
St. James Parish Clerk of Court
Convent, Louisiana

We have audited the financial statements of the governmental activities, the major fund, and the aggregate fund information of the St. James Parish Clerk of Court as of and for the year ended June 30, 2007, which collectively comprise the St. James Parish Clerk of Court's basic financial statements and have issued our report thereon dated August 1, 2007. We conducted our audit in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in Government Auditing Standards issued by the Comptroller General of the United States.

Internal Control Over Financial Reporting

In planning and performing our audit, we considered the St. James Parish Clerk of Court's internal control over financial reporting as a basis for designing our auditing procedures for the purpose of expressing our opinions on the financial statements, but not for the purpose of expressing an opinion on the effectiveness of the St. James Parish Clerk of Court's internal control over financial reporting. Accordingly, we do not express an opinion on the effectiveness of the St. James Clerk of Court's internal control over financial reporting.

A control deficiency exists when the design or operation of a control does not allow management or employees, in the normal course of performing their assigned functions, to prevent or detect misstatements on a timely basis. A significant deficiency is a control deficiency, or combination of control deficiencies, that adversely effects the entity's ability to initiate, authorize, record, process, or report financial data reliably in accordance with generally accepted accounting principles such that there is more than a remote likelihood that a misstatement of the entity's financial statements that is more than inconsequential will not be prevented or detected by the entity's internal control. We consider the deficiency described in the accompanying summary schedule of current and prior year audit findings and corrective action plan as item 07-1(IC) to be a significant deficiency in internal control over financial reporting.

A *material weakness* is a *significant deficiency*, or combination of significant deficiencies, that results in more than a remote likelihood that a material misstatement of the financial statements will not be prevented or detected by the entity's control.

Member of:
AMERICAN INSTITUTE OF
CERTIFIED PUBLIC ACCOUNTANTS

Member of:
SOCIETY OF LOUISIANA
CERTIFIED PUBLIC ACCOUNTANTS

EXHIBIT R

| Find tacos, cheap dinner, Max's | Near San Francisco, CA | Log In |

Home   About Me   Write a Review   Find Friends   Messages   Talk   Events

yelp

Hey there! We've updated our Privacy Policy -- you can check out the new version here.

# Tureau Ralph Judge

Lawyers    Edit



828 S Irma Blvd
Gonzales, LA 70737
Get Directions
(225) 621-8500

### Is this your business?

Claim your business page and access your free Yelp for Business Owners account.

- Immediately update business information
- Respond to reviews and privately message customers
- See the customer leads your business page generates
- Monitor how many people view your business page

Edit business info

Hours

Browse nearby

Restaurants, Nightlife, Shopping, Show all

| About | Discover | Yelp for Business Owners | Languages |
|---|---|---|---|
| About Yelp | The Weekly Yelp | Claim your Business Page | **English** |
| Careers | Yelp Blog | Advertise on Yelp | |
| Press | Support | Yelp SeatMe | Countries |
| Investor Relations | Yelp Mobile | Business Success Stories | **United States** |
| Content Guidelines | Developers | Business Support | |
| Terms of Service | RSS | Yelp Blog for Business Owners | |
| Privacy Policy | | | |
| Ad Choices | | | |

Gonzales Business Listings #  A B C D E F G H I J K L M N O P Q R S T U V W X Y Z  | Newly Added

Site Map

Atlanta | Austin | Boston | Chicago | Dallas | Denver | Detroit | Honolulu | Houston | Los Angeles | Miami | Minneapolis | New York | Philadelphia | Portland | Sacramento | San Diego

Copyright © 2004–2015 Yelp Inc. Yelp, yelp, and related marks are registered trademarks of Yelp.

Ex. S

Print

## Notary Search - Detail

| | |
|---|---|
| **Name:** | MR. RALPH TUREAU |
| **Address:** | 828 S. IRMA BLVD., BLDG. 2<br>GONZALES, LA 70737 |
| **Phone:** | (225) 621-8514 |
| **Notary ID Number:** | 21515 |
| **Parish:** | ASCENSION with STATEWIDE JURISDICTION |
| **Agency:** | N/A |
| **Notary Type:** | Attorney<br>**Bar Roll #:** 12960 |
| **Status:** | Active |
| **Commission Date:** | 06/02/1971 |
| **Oath Date:** | 06/07/1971 |
| **Surety Expiration Date:** | Not Required |
| **Annual Report Current:** | Not Applicable |

[ Back to Search Results ]  [ New Search ]



REASON #3: THERE IS NO IMMUNITY FOR INJUNCTIVE RELIEF.

79. There can be no immunity for injunctive relief.
Claims for injunctive relief are not barred by judicial immunity. (Pulliam v. Allen, 466 U.S. 522, 528-43, 80 L. Ed. 2d 565, 104 S. Ct. 1970 (1984).) For such a showing, the judicial officer must "know that he lacks jurisdiction, or act despite a clearly valid statute or case law expressly depriving him of jurisdiction." Mills v. Killebrew, 765 F.2d 69, 71 (6th Cir. 1985) (citing Rankin v. Howard, 633 F.2d 844, 849 (9th Cir. 1980)).)

REASON #4: THERE CAN BE NO IMMUNITY FOR FRAUD UPON THE COURTS.

80. In an action for Fraud Upon the Courts by judicial officers including the judge, there can be no immunity for the judicial officers. The judges are indispensable parties to this litigation. Based upon Windsor's research, he believes there is no case law based upon similar facts that says immunity is allowed in a case such as this.

81. Judge Evans and Judge Duffey have committed fraud upon the courts. FRCP Rule 60(d) gives Windsor the legal right to file this independent action for relief from a judgment and orders due to fraud upon the courts stated in the A.V.C.. Judge Evans and Judge Duffey cannot be given judicial immunity for this fraud because Windsor's entire case depends upon his ability to prove the fraud by these officers of the court. Lawmakers did not intend for the "officers of the court" applicable to FRCP Rule 60(d) to exclude the primary officers – the judges. If lawmakers intended FRCP Rule 60(d) to pertain only to attorneys and staff members of judges, that is what the lawmakers would have said.

82. Judges are officers of the court. (The Law Encyclopedia.) A federal judge is a federal judicial officer, paid by the federal government to act impartially and lawfully. A judge is not the court. (People v. Zajic, 88 Ill.App.3d 477, 410 N.E.2d 626 (1980).) FRCP Rule 60(d) says nothing about granting the primary officer of the court immunity.

83. Fraud upon the courts has been specifically identified to include cases "where the judge has not performed his judicial function." In this Civil Action, Windsor has alleged that Judge Evans and Judge Duffey have failed to perform judicial functions.

84. The judicial functions that they failed to perform are listed in the A.V.C., paragraph 69 of the Emergency Ex Parte Application for Temporary Restraining Order and Motion for Preliminary Injunction. Some specific examples include abandoning the case for 213 days; Judge Evans ruling on several matters that affected her; Judge Evans filing motions on her behalf in MIST-1 when she was presiding; Jude Evans ignoring a subpoena for production of documents; honestly reporting the facts; honestly reporting the law; honoring Constitutional rights; and much more.

85. Bulloch v. United States makes it CLEAR that fraud upon the courts is a proper action against a judge:

In the court stated "Fraud upon the courts is fraud which is directed to the judicial machinery itself. It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted." (Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985).) (See also United States v. Smiley, 553 F.3d 1137 (8th Cir. 01/26/2009); Weese v. Schukman, 98 F.3d 542, 552 (10th Cir. 1996); Campbell v. Meredith Corp., No. 09-3067 (10th Cir. 08/24/2009).) [emphasis added.]

86. Judge Evans, Judge Duffey, Hawkins & Parnell, Carl Hugo Anderson are officers of the court who have committed fraud. Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the courts."

"Fraud upon the courts" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjuding cases that are presented for adjudication." (Kenner v. C.I.R., 387 F.2d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23.) (See also Lockwood v. Bowles, 46 F.R.D. 625, 631 (D.D.C. 1969).) [emphasis added.]

Under Federal law, when any officer of the court has committed "fraud upon the courts", the orders and judgment of that court are void, of no legal force or effect. Cobell v. Norton, 226 F.Supp.2d 1 (D.D.C. 09/17/2002).)

"Fraud upon the courts" makes void the orders and judgments of that court. It is also clear and well-settled law that any attempt to commit "fraud upon the courts" vitiates the entire proceeding. The People of the State of Illinois v. Fred E. Sterling, 357 Ill. 354; 192 N.E. 229 (1934); Allen F. Moore v. Stanley F. Sievers, 336 Ill. 316; 168 N.E. 259 (1929); In re Village of Willowbrook, 37 Ill.App.2d 393 (1962); Dunham v. Dunham, 57 Ill.App. 475 (1894), affirmed 162 Ill. 589 (1896); Skelly Oil Co. v. Universal Oil Products Co., 338 Ill.App. 79, 86 N.E.2d 875, 883-4 (1949); Thomas Stasel v. The American Home Security Corporation, 362 Ill. 350; 199 N.E. 798 (1935); Manufacturers Hanover Trust Co. v. Yanakas, 7 F.3d 310 (2nd Cir. 10/18/1993).) [emphasis added.]

REASON #5: JUDGES SHOULD HAVE NO IMMUNITY FOR VIOLATION OF CONSTITUTIONAL RIGHTS

87. Windsor's Constitutional rights have been violated: First Amendment right to petition; Fifth Amendment right to due process; Sixth Amendment right to a fair trial; Seventh Amendment right to a trial by jury; Ninth Amendment right to fundamental rights; Fourteenth Amendment right to due process. (See A.V.C., pages 58 to 61.)

88. Judge Evans and Judge Duffey committed crimes for the purpose of depriving Windsor of his Constitutional rights. There is no immunity.

In O'Shea v. Littleton, supra at 503, the Supreme Court stated: we have never held that the performance of the duties of judicial, legislative, or executive officers, requires or contemplates the immunization of otherwise criminal deprivations of constitutional rights. Cf. Ex parte Virginia, 100 U.S. 339, 25 L. Ed. 676 (1880). On the contrary, the judicially fashioned doctrine of official immunity does not reach "so far as to immunize criminal conduct proscribed by an Act of Congress...." (Gravel v. United States, 408 U.S. 606, 627, 33 L. Ed. 2d 583, 92 S. Ct. 2614 (1972); United States v. Gillock, 587 F.2d 284 (6th Cir. 11/01/1978).) [emphasis added.]

REASON #6: JUDGES SHOULD HAVE NO IMMUNITY FOR DENIAL OF DUE PROCESS

89. Windsor has been denied due process.

90. Windsor's civil and Constitutional rights were violated under color of law. Windsor has biased judges at the District Court and Eleventh Circuit committing criminal acts. His access to the courts has been blocked, and Judge Evans disappeared for 213 days and ignored everything in the case.

"The Due Process Clause serves two purposes…One is to produce, through the use of fair procedures to prevent the wrongful deprivation of interests; …the other is a guarantee of basic fairness, i.e.: to make people feel that they have been treated fairly." "[t]rial before an 'unbiased judge' is essential to due process." Johnson v. Mississippi, 403 U.S. 212, 216 (1971); accord Concrete Pipe & Prods. V. Constr. Laborers Pension Trust, 508 U.S. 602, 617 (1993). (See Marshall v. Jerrico, Inc., 446 U.S. 238, 100 S.Ct 1610 (1980); Mathews v. Eldridge, 424 U.S. 319, 344 (1976).)

"justice must give the appearance of justice" Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing Offutt v. United States, 348 U.S. 11, 14, 75 S. Ct. 11, 13 (1954); Peters v. Kiff, 407. U.S. 493, 502 (1972).

91. In this case, Windsor has been deprived of his property interests in over $1,000,000, and more.

See Town of Castle Rock v. Gonzales, 125 S.Ct. 2796, 2803 (2005) (citation and internal quotation marks omitted); Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972); see also Bloch v. Powell, 348 F.3d 1060, 1068 (D.C. Cir. 2003); Roth v. King, 449 F.3d 1272 (D.C.Cir. 06/09/2006).)

92. Windsor has been denied due process.

TENDERED FOR FILING

MAY 29 2015

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

UNITED STATE DISTRICT

EASTERN DISTRICT COURT OF lOUISIANA

May 22, 2015                                CIVIL ACTION

                                            Judge Mary Ann vial Lemmon

Plaintiffs                                  Cect "s" Mag 2

Neola Gans and Sullivan Jones

Versus

Defendants

Charles S. Becnel Partnership and Association

Affidavit of Proof

Of Service by Certified Mail

Come now into the court, Neola Gans and Sullivan Jones, the plaintiffs are submitting the green signature certify card from Ralph Tureau, so that it can be recorded into the records that he was properly served according to rule 4 and 5, on 3/9/2015, mailed to Ralph Tureau was the summon, complaint, Chronological order Memorandum and Evidence, the plaintiff received the signature green certify card from Ralph Tureau, that was mailed to his workplace see Exhibit R , S, T and U,on 3/9/2015, that certify card was not return until 4/27/2015 two days before Kenneth Blanchard submission date 4/29/2015, he had no problem returning the green signature certify cards of the the opposition to the motion to dismiss from Kenneth blanchard and Twister Gas LLC, those certify mail was sent to the same address the secretary of state of Louisiana and the internet has.

Respectfully submitted

                                            *Sullivan Jones (signature)*

                                            Sullivan Jones

Attesting to signature only
*Debra L Petter (signature)*

Debra L. Petter
Notary Public
Ascension Parish
ID# 021491

*Exhibit 15, T*

```
            2165690145-0099
03/09/2015 (800)275-8777 11:42:05 AM
=====================================
========= Sales Receipt =========
Product        Sale  Unit        Final
Description    Qty   Price       Price

@@ ~~ BATON ROUGE LA 70808       $5.75
Zone-1
Priority Mail 2-Day By
Weight
 15.80 oz.
  Expected Delivery: Wed 03/11/15
  Includes $50 insurance

  Return Rcpt (Green              $2.70
  Card)
  @@ Certified                    $3.30
  USPS Certified Mail #:
  70080150000286196164
                              ========
  Issue Postage:                 $11.75

@@ ~~ CONVENT LA 70723           $5.75
Zone-1
Priority Mail 2-Day By
Weight
 14.20 oz.
  Expected Delivery: Wed 03/11/15
  Includes $50 insurance

  Return Rcpt (Green              $2.70
  Card)
  @@ Certified                    $3.30
  USPS Certified Mail #:
  70080150000286196218
                              ========
  Issue Postage:                 $11.75

@@ ~~ CONVENT LA 70723           $5.75
Zone-1
Priority Mail 2-Day By
Weight
 14.20 oz.
  Expected Delivery: Wed 03/11/15
  Includes $50 insurance

  Return Rcpt (Green              $2.70
  Card)
  @@ Certified                    $3.30
  USPS Certified Mail #:
  70080150000286196232
                              ========
  Issue Postage:                 $11.75

@@ ~~ CONVENT LA 70723           $5.75
Zone-1
Priority Mail 2-Day By
Weight
 14.20 oz.
  Expected Delivery: Wed 03/11/15
  Includes $50 insurance
```

```
          DONALDSONVILLE
       DONALDSONVILLE, Louisiana
              703469998
            2165690145-0098
03/09/2015 (800)275-8777 11:41:55 AM
=====================================
========= Sales Receipt =========
Product        Sale  Unit        Final
Description    Qty   Price       Price

@@ ~~ NEW ORLEANS LA             $5.75
70130-3414 Zone-1
Priority Mail 1-Day By
Weight
 14.20 oz.
  Expected Delivery: Tue 03/10/15
  Includes $50 insurance

  Return Rcpt (Green              $2.70
  Card)
  @@ Certified                    $3.30
  USPS Certified Mail #:
  70080150000286196126
                              ========
  Issue Postage:                 $11.75

@@ ~~ PLAQUEMINE LA              $5.75
70764-3303 Zone-1
Priority Mail 2-Day By
Weight
 14.10 oz.
  Expected Delivery: Wed 03/11/15
  Includes $50 insurance

  Return Rcpt (Green              $2.70
  Card)
  @@ Certified                    $3.30
  USPS Certified Mail #:
  70080150000286196201
                              ========
  Issue Postage:                 $11.75

@@ ~~ BATON ROUGE LA             $5.95
70802-6129 Zone-1
Priority Mail  By Weight
 1 lb.  0.50 oz.
  Includes $50 insurance

  Return Rcpt (Green              $2.70
  Card)
  @@ Certified                    $3.30
  USPS Certified Mail #:
  70080150000286196171
                              ========
  Issue Postage:                 $11.95

@@ ~~ KENNER LA 70062 Zone-1     $5.75
Priority Mail 1-Day By
Weight
 14.20 oz.
  Expected Delivery: Tue 03/10/15
  Includes $50 insurance

  Return Rcpt (Green              $2.70
```

```
USPS Certified Mail #:
70080150000286196249

Issue Postage:              $11.75

@@ ~~ CONVENT LA 70723       $5.75
Zone-1
Priority Mail 2-Day By
Weight
14.20 oz.
 Expected Delivery: Wed 03/11/15
 Includes $50 insurance

Return Rcpt (Green           $2.70
Card)
@@ Certified                 $3.30
USPS Certified Mail #:
70080150000286196133

Issue Postage:              $11.75

@@ ~~ CONVENT LA 70723       $5.75
Zone-1
Priority Mail 2-Day By
Weight
14.20 oz.
 Expected Delivery: Wed 03/11/15
 Includes $50 insurance

Return Rcpt (Green           $2.70
Card)
@@ Certified                 $3.30
USPS Certified Mail #:
70080150000286196188

Issue Postage:              $11.75

@@ ~~ CONVENT LA 70723       $5.75
Zone-1
Priority Mail 2-Day By
Weight
14.20 oz.
 Expected Delivery: Wed 03/11/15
 Includes $50 insurance

Return Rcpt (Green           $2.70
Card)
@@ Certified                 $3.30
USPS Certified Mail #:
70080150000286196331

Issue Postage:              $11.75

Total:                      $82.25

Paid by:
Cash                       $100.00
Change Due:                -$17.75

@@ For tracking or inquiries go to
   USPS.com or call 1-800-222-1811.
```

```
Weight
14.20 oz.
 Expected Delivery: Tue 03/10/15
 Includes $50 insurance

Return Rcpt (Green
Card)
@@ Certified
USPS Certified Mail #:
70080150000286196195

Issue Postage:              $11.75

@@ ~~ GONZALES LA 70737-3631 $5.75
Zone-1
Priority Mail 2-Day By
Weight
14.20 oz.
 Expected Delivery: Wed 03/11/15
 Includes $50 insurance

Return Rcpt (Green           $2.70
Card)
@@ Certified                 $3.30
USPS Certified Mail #:
70080150000286196157

Issue Postage:              $11.75

@@ ~~ LUTCHER LA 70071-0402  $5.75
Zone-1
Priority Mail 1-Day By
Weight
14.20 oz.
 Expected Delivery: Tue 03/10/15
 Includes $50 insurance

Return Rcpt (Green           $2.70
Card)
@@ Certified                 $3.30
USPS Certified Mail #:
70080150000286196140

Issue Postage:              $11.75

@@ ~~ PLAQUEMINE LA          $5.75
70765-0679 Zone-1
Priority Mail 2-Day By
Weight
14.10 oz.
 Expected Delivery: Wed 03/11/15
 Includes $50 insurance

Return Rcpt (Green           $2.70
Card)
@@ Certified                 $3.30
USPS Certified Mail #:
70080150000286196225

Issue Postage:              $11.75

Total:                      $82.45
```

*Judge Ralph Tureau* →

Exhibit U

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _(signed)_ ☒ Agent / ☐ Addressee

B. Received by (Printed Name): SUSAN ___
C. Date of Delivery: APR 27 2015

D. Is delivery address different from item 1? ☐ No
If YES, enter delivery address below:

1. Article Addressed to:

Ralph Tureau
828 S. Irma Blvd, Bldg 2,
Gonzales, La. 70737.

3. Service Type
☐ Certified Mail   ☐ Priority Mail Express
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)  ☒ Yes

2. Article Number (Transfer from service label)

PS Form 3811, July 2013   Domestic Return Receipt

---

UNITED STATES POSTAL SERVICE
BATON ROUGE LA 708 2
27 APR 2015

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box •

Sullivan Jones
303 West 2nd St,
Donaldsonville, La. 70346.

April 29, 2015
From Ralph Tureau
I received Summons Card & Complaint.

Sullivan Jones
303 West 2nd Street
Donaldsonville, LA 70346

United States District Court
500 Poydras Street
Room C-151
N.O. La. 70130

7011 2970 0002 9618 1918

CERTIFIED MAIL